[S. F. No. 3407.   Department One.—April 1, 1904.]

A. SARRAILLE, Administratrix of the Estate of Frederick
Garnier, Deceased, Respondent, v. E. CALMON, Ap-
pellant.

PROMISSORY NOTES—PAYMENT—BURDEN OF PROOF—PRESUMPTION—
CONFLICTING EVIDENCE—SUPPORT OF FINDING.—In an action upon
promissory notes the burden of proof is upon the defendant to show
payment alleged as a defense. The possession of the notes by the
plaintiff is presumptive evidence of non-payment which may out-
weigh positive testimony in reference to payment, and produces
a sufficient conflict in the evidence to support a finding of non-
payment in favor of the plaintiff.

ID.—SPECIAL LOAN TO PLAINTIFF AFTER MATURITY OF NOTES—RE-
PAYMENT—WEIGHT OF INFERENCE OF PAYMENT.—A special loan by
defendant to the plaintiff after maturity of the notes sued upon,
to enable plaintiff to obtain an assignment of a mortgage, and
the repayment to defendant of a note given therefor by the plaintiff,
without mention of any earlier transactions, and without anything
in the deal which related to a settlement of former accounts, can
only give rise to an inference of payment of defendant's notes to
the plaintiff, the weight of which was for the judge to determine,
and could at most only create a conflict in the evidence, the finding
upon which cannot be disturbed.

ID.—CONSTRUCTION OF CODE—PROVINCE OF JURY—JUDGE SITTING AS
JURY.—Subdivision 2 of section 2061 of the Code of Civil Proce-
dure, providing that jurors are to be instructed "That they are
not bound to decide in conformity with the declarations of any
number of witnesses, which do not produce conviction in their
minds, against a less number or against a presumption or other
evidence satisfying their minds," states a rule which applies to a
judge sitting as a jury.

ID.—EVIDENCE—CROSS-EXAMINATION AS TO OTHER LOANS—NOTE AS-
SIGNED BY DEFENDANT TO PLAINTIFF.—The plaintiff had the right
to show, if he could, that there were other demands upon which pay-
ments testified to by the defendant might have been applied; and
where defendant testified on cross-examination that plaintiff had
made no other loans to defendant, it was not error to admit evi-
dence of a note assigned by defendant to the plaintiff, which might
be shown to have been security for a loan, though not of itself suffi-
cient to prove it.

APPEAL from an order of the Superior Court of the City
and County of San Francisco denying a new trial. Thomas
F. Graham, Judge.

The facts are stated in the opinion.

A. Ruef, for Appellant.

A disputable presumption is the weakest and least satis-factory kind of evidence. (*Savings and Loan Soc.* v. *Bur-nett,* 106 Cal. 514.) The presumption that a creditor will not borrow from his debtor, and that the lender is not in-debted to the borrower at the time of a loan, is stronger than the presumption of non-payment from possession of a note by the payee. (*Dutcher* v. *Porter,* 63 Barb. 15; *French* v. *French,* 84 Iowa, 655; *De Freest* v. *Bloomingdale,* 5 Denio, 304; *Johnson* v. *White,* 8 Leigh, 214; *Duguid* v. *Ogilvie,* 3 Smith, E. D., 527; *Gould* v. *Chase,* 16 Johns. 226; *Lake* v. *Tysen,* 6 N. Y. 461; *Kenman* v. *Cannefax,* 34 Mo. 147; *Garnier* v. *Renner,* 51 Ind. 372; *McIntyre* v. *Meldrin,* 63 Ga. 58; *Bank* v. *Ensminger,* 7 Blackf. 105; *Wilkins* v. *Ferguson,* 47 Ind. 136; *Long* v. *Strauss,* 124 Ind. 84; *Charonleau* v. *Charon-leau,* (Ariz. 1897), 50 Pac. 112.)

Barna McKinne, for Respondent.

The presumption of payment by giving a note by plaintiff to the defendant, was overthrown by the explanation that it was given for a temporary loan. (*Duguid* v. *Ogilvie,* 3 Smith, E. D., 527; *Gould* v. *Chase,* 16 Johns. 226.) The finding of non-payment is supported by the presumption of non-pay-ment as evidence and the failure of defendant to prove pay-ment to the satisfaction of the court sitting as a jury. The evidence being conflicting, the decision of the court cannot be disturbed. (*Gerold* v. *Brunswick & Balke Co.,* 67 Cal. 124.)

CHIPMAN, C.—Action to recover the amount due on cer-tain three promissory notes executed and delivered by defend-ant to one Garnier, plaintiff's intestate, in his lifetime. The cause was tried by the court without a jury. Findings were in favor of plaintiff, and judgment passed accordingly. De-fendant appeals from the order denying his motion for a new trial. The action was brought in the lifetime of the deceased, and was continued in the name of the administra-trix. At the trial plaintiff introduced the notes in evidence and testified that nothing had been paid to her by any one on

account of the notes. Defendant admitted their execution at the trial, but claimed that he paid the first two; and as to the third, he admitted non-payment. The dates and amounts of the notes were as follows: April 7, 1897, for $280, with 1 per cent per month interest, payable on demand; November 15, 1897, for $520, with 1 per cent per month interest, payable six months from date; January 8, 1901, for $35, payable on demand.

It is contended that the evidence was insufficient to justify the finding and decision that the notes given to Garnier by Calmon were not paid.

The possession of the notes raises the presumption of non-payment, and appellant admits that the burden is upon him to prove payment. In a verified answer defendant alleged that the first two notes above described had been fully paid, and as to the third note that it was given without any consideration. A witness in rebuttal testified that he made demand on defendant for the payment; that defendant was "excited and angry, and said that he would pay the note for $35. As to the other notes, he absolutely refused to acknowledge them in any way. He claimed they were not signed by him, that they were not his signature, and did n't recollect making them at all, and thought the signatures to them had been forged." After this action was commenced, defendant went to the office of plaintiff's attorney to examine the notes. He testified: "I stated at the time that the notes (the first two) were forgeries. The reason for the statement was that I was then sure, and positively sure, that I had torn the notes up, and that these notes were forgeries, and since I spoke to Mr. Ruef [defendant's attorney], I found out that I tore up the wrong ones." He testified that he gave the two-hundred-and-eighty-dollar note, dated April 7, 1897, and paid it on April 12, 1897, at 1148 Sutter Street; that he paid thirty dollars of his own money and borrowed two hundred and fifty dollars from one Berdou, a wine merchant, and paid the money to Garnier; that the note was given by witness (defendant) as part of the purchase price of a lodging-house, 502 Bush Street, which witness had purchased from one Delbos, who owed Garnier this amount. He testified: "When I paid Garnier the amount of this note he gave me a piece of paper which I read; it was the note I made. I have something more

to say about this, I mean when I borrowed the two hundred and fifty dollars from Mr. Berdou, and I paid Mr. Garnier that two hundred and eighty dollars, and Mr. Garnier gave me the note, I tore it in pieces." In further reply to his counsel he testified: "He gave me a piece of paper; I read it, it was the old note I made five days before." Shown the note he said: "Of course, it is not the paper I tore up; but I tore up a piece of paper with my name on the bottom like this." On the back of the note it is indorsed: "Received twenty on account, 12th April, 97." Berdou, referred to above by defendant, testified that he gave defendant two hundred and fifty dollars on the day mentioned by defendant, and he saw defendant give it to Garnier, and said the latter gave Calmon a piece of paper which witness did not read, and that defendant "tore it up in pieces in the presence of Garnier."

Of the five-hundred-and-twenty-dollar note, dated November 15, 1897, defendant testified: "I paid Garnier this note in one-hundred-dollar payments. The first payment I made at 1148 Sutter Street, on December 13, 1897," one hundred dollars on the principal, in gold, and five dollars interest (this note was payable six months after date); that the payment was in the presence of one Elsie Wilson; that after that he paid Garnier at Garnier's house on the 15th of each month, and on one occasion witness's wife was present; the last payment was one hundred and twenty dollars. "When I made this last payment he handed me a piece of paper which I thought was the note which I had signed for the $520, and then and there tore it up." Again he testified that when he made this last payment, "he [Garnier] gave me a receipt, and, in the presence of my wife, I tore it to pieces." He was asked if he read it to see if it was a receipt or a note, and replied: "That is just the same to me; it was a piece of paper. I thought it was the one I had signed." He testified: "Note and piece of paper means all the same to me." Witness Elsie Wilson (referred to by defendant) testified: "That about December 13, 1897, she saw defendant pay Garnier $100 in gold and some silver. Heard some conversation in French, but did not understand it." A paper passed from Garnier to Calmon at the time, "but witness did not know what became of it." Defendant's wife testified that she saw her husband

pay Garnier one hundred and twenty dollars on April 15th, and that her husband said: "Now we are even so far," and Garnier replied: "Certainly we are," witness adding, "and Mr. Garnier gave my husband a paper, I did not read. My husband tore up the paper and said 'now we are even.'" This is the evidence relating to these two notes. Subdivision 2 of section 2061 of the Code of Civil Procedure provides that jurors are to be instructed (and the rule of course applies to a judge sitting as a jury) "that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number or against a presumption or other evidence satisfying their minds." In *People* v. *Milner*, 122 Cal. 171, the court said: "In this is a distinct recognition of two of the facts: 1. That a presumption is evidence; and 2. That it is evidence which may outweigh the positive testimony of witnesses against it. . . . Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption it still remains with the jury to say whether or not the fact has been proven; and if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption." In weighing the testimony before it, the court evidently was unwilling to accept the declarations of the witnesses offered to prove payment as producing conviction in its mind. The presumption of non-payment arising from possession of uncanceled notes, admittedly executed by defendant, was evidence that they were not paid, and produced a conflict with the evidence of defendant's witnesses. We cannot put ourselves in the shoes of the judge who had the witnesses before him; we cannot say to what extent he discovered what he thought were inherent improbabilities in the statements of witnesses, nor can we say how far the witnesses, by their manner of testifying, may have given rise to doubts of their sincerity, or may have impressed the judge with their having given a wrong coloring to material facts. No witness saw or read the papers which defendant says he tore in pieces. Defendant testified that he read them and tore them up, and that they were the notes, but the notes themselves disprove this. The evidence does not disclose whether or not deceased held other claims against defendant which

might have been the ones defendant paid, if he paid any, as he claims. It was at least an unusual circumstance that defendant, who is not lacking in business capacity, should in every instance destroy the papers he claims to have received from deceased. His conduct was contrary to the business methods of ordinarily prudent men. Between defendant and deceased no relation of trust and confidence existed or is claimed, and there is no issue of fraud raised in the case. It is sufficient to say that the evidence was in conflict and the conclusion of the court cannot now be disturbed.

But it appears from the evidence that in January, 1899, defendant loaned Garnier one thousand dollars, which the latter repaid within about three months. It is urged by counsel that this fact "overthrew and dispelled the presumption of non-payment of defendant's notes to Garnier." The facts as to this transaction were as follows: Garnier was desirous of obtaining the assignment of a mortgage held by one McLaughlin on certain property in which Garnier had some interest; he needed one thousand dollars to make up the required sum, and defendant loaned it to him. At this time one Ribeyrol had a lease on a lodging-house, No. 502 Bush Street; Ribeyrol owed Garnier six hundred dollars; the latter suggested to defendant to buy this lease and thus make a turn by which Garnier would collect the money due him from Ribeyrol; defendant bought the lease; the six hundred dollars was applied on Garnier's note to defendant, and about a month later he paid defendant the balance, four hundred dollars, and took up his note. Nothing in the deal related to a settlement of former accounts or dealings between the parties, and no mention was made of any earlier transactions. Appellant cites *Dutcher* v. *Porter,* 63 Barb. 15; *French* v. *French,* 84 Iowa, 655, and some other cases in support of his contention. In *Dutcher* v. *Porter,* the action was by the administrator of Dutcher, deceased, on a promissory note dated September 19, 1865. Defendant set up in defense an agreement dated November 15, 1865, in which, "for and in consideration of a certain sum of money, together with all claims and demands, that the said Cortland Dutcher [deceased] holds against me," etc., defendant bound himself and his heirs to provide support for Dutcher during his natural life. The court held this to be *prima facie* evidence of an

accounting between the same parties, and especially of all claims the intestate held against defendant, including the note in question. In *French* v. *French*, 84 Iowa, 655, there was an instruction to the jury to the effect that where a note and mortgage are given by the debtor to the creditor, after a note held by the creditor against the debtor has become due and is claimed to be unpaid, the giving of the note and mortgage would warrant the inference that the earlier note had been paid, and would "cast on the plaintiff the burden to prove that it had not been paid in the transaction out of which the mortgage was made, because the presumption is warranted that one holding a valid debt against another, which is then past due, would not be likely to give a note and mortgage to him without applying on the claim the debt due to him before giving the mortgage." This instruction was held not erroneous "as applied to the facts of the case." These facts are somewhat complicated, and would require some . space to explain. The cases no doubt, where the circumstances warrant it, hold to the doctrine embodied in this instruction. It was claimed that the payee of this note had not paid the note given by him to the maker of the mortgage note, and the question was as to where the burden of proof lay. In the case now here the loan was made and the note was given for a special purpose, apparently as a temporary matter, and the note was soon paid. So far as the burden of proof of payment is concerned, appellant concedes it to be upon him, as it certainly is. The question is in no wise to be influenced by the evidence of payment which has already been examined, but it is simply whether, under the circumstances disclosed, the giving of this note for one thousand dollars by Garnier, after defendant's notes to him were past due, raised a presumption which overcame and dispelled the presumption of non-payment. At most the fact unexplained might give rise to an inference of payment of the former notes of defendant, but in view of the explanation it cannot be said as matter of law that this inference was superior to and dispelled the presumption of non-payment arising from possession of the notes. The presumption of non-payment was evidence of the fact (*People* v. *Milner*, 122 Cal. 171), and the most that can be said of the inference arising from the giving of the note by Garnier is that it created a conflict

CXLII. Cal.—42

in the evidence. It was for the judge who passed upon the facts to determine the weight to be given this inference.

Among the cases cited by appellant as further illustrating the rule is *Duguid* v. *Ogilvie,* 3 Smith, E. D., 327. Plaintiff sued for labor and services. The answer averred an indebtedness from plaintiff to defendant upon a note. The cause went to a referee for report. Plaintiff proved his services in January and February, and defendant proved that in December of the same year plaintiff made to him a promissory note, and paid it, upon its maturity, the following January. Defendant insisted that the execution and payment of the note were conclusive of the non-existence of any indebtedness to plaintiff. The referee notified the plaintiff that he might submit evidence as to the consideration and circumstances under which the note of December was given. The defendant was sworn in plaintiff's behalf, and stated the circumstances of the loan, from which it appeared that the money borrowed was upon a pressing emergency for twenty-five days. The court said it was competent for defendant to have given "in evidence any acts of plaintiff, or conversation between himself and the plaintiff, from which it might be inferred that the payments made to the plaintiff were received by him in full satisfaction of his claim. Not having done so, it may fairly be presumed that the claim for services remained unadjusted, and that the giving and the payment of the note was a separate and distinct transaction, upon which no presumption could be found as to the real state of the indebtedness between the parties." So here there was no fact elicited tending in the slightest degree to show that defendant's notes were considered in the transaction, while the purpose of the loan fully appeared from defendant's own evidence. (See *De Freest* v. *Bloomingdale,* 5 Denio, 304, cited in *Duguid* v. *Ogilvie,* 3 Smith, E. D., 327.)

In *Gould* v. *Chase,* 16 Johns. 226, cited by appellant, the court said: *"In the absence of all explanation,* the giving of the note in question is *prima facie* evidence, that these demands have been satisfied; but when to this fact is added the testimony, that the defendant promised to pay the note when it was shown to him, the presumption that the demands offered as a set-off, had been previously settled, is not to be resisted." These cases sufficiently illustrate the question be-

fore us. The giving of the note by Garnier to defendant is fully explained, and there is nothing connected with it indicating a settlement of accounts between the parties, while the circumstances show it to have been a distinct transaction, independent of any prior business relations of the parties.

Upon the cross-examination of the defendant, as a witness in his own behalf, he was asked by plaintiff's counsel if he (Garnier) "had not loaned other moneys" to defendant "beside these moneys sued on in these notes," to which he answered: "No, sir, never." He was shown a note dated February 2, 1895, for one hundred dollars, signed by one Hyman and one Levere, and given to defendant as payee and by him assigned to Garnier on April 30, 1895, for value received. The note was admitted in evidence against defendant's objection that it was immaterial and irrelevant. The ruling is urged as prejudicial error.

The plaintiff had a right to show, if he could, that there were other demands at the time owing from Calmon to Garnier, as that might justify the inference that the money Calmon claims to have paid had been, in part at least, applied on those demands, instead of the notes in suit.

The transaction did not on its face import a "loan of moneys," as Garnier may have bought the note. If other evidence had been offered tending to show a loan and a transfer of the note as collateral security, the note with defendant's assignment would have been complete evidence in corroboration. Without this additional evidence the paper was not sufficient of itself to show a loan, but as it was evidence of one circumstance that might have attended a loan, and the court, at the time it was offered, could not foresee that no further evidence would be offered, we do not think its admission was error.

It is advised that the order be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

Shaw, J., Angellotti, J., Van Dyke, J.

Hearing in Bank denied.