[Civ. No. 535. Fourth Appellate District.—February 24, 1932.]

FREDERICK M. PITT, Administrator, etc., Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Rosenthal & Rosenthal and E. B. Drake for Appellant.

W. I. Gilbert for Respondent.

LAMBERT, J., *pro tem.*—The facts leading up to this controversy are briefly: On July 19, 1926, the respondent was operating a freight train in interstate commerce in Riverside County, California, and transporting freight in a westerly direction toward Los Angeles, California. Leslie M. Shaw, now deceased, was an employee of respondent on said date and was acting as a "swing brakeman". He had received instructions that when the train reached a station called Garnet, a helper "cut" was to be made, that is, an extra engine was to be added to the train for the purpose of assisting the train up grade. The roadbed at this point was laid upon a grade of 1.7 per cent, and the train was ascending the grade. The deceased, Shaw, pursuant to his instructions, went forward on the top of the train to the tenth car from the caboose, transmitted a stop signal to the engineer, and was shortly thereafter, and about the time the train came to a stop or rest, seen upon the ground in the act of uncoupling the cars with his left hand and simultaneously giving the engineer a "go ahead" signal with his right hand. After the cars were "cut" deceased Shaw went between the cars, that is the ten attached to the caboose and the forty-five cars attached to the engine. While thus between the cars that part of the train consisting of the forty-five cars rolled or slid down grade about six feet and crushed Shaw to death. This action was brought by the administrator of his estate to recover damages in behalf of his heirs consisting of his wife and a minor child aged one year and seven months. It is based on the Federal Employers' Liability Act of 1908 and amendments thereto. The complaint originally contained seven counts. By an amendment what is designated a ninth cause of action was added. We have been unable to discover an eighth cause of

action, so presume it exists only in contemplation. At all events, so far as this discussion is concerned it will not be missed. While the failure to have the train properly equipped as required by the Safety Appliance Act was alleged, this charge was abandoned at the trial. Accordingly, under the various allegations contained in the several counts of the complaint and the amendment to the complaint (count nine), the question of respondent's liability rested primarily upon the alleged failure of its employees to perform a duty imposed upon them. The respondent by its answer put in issue each and all of the material allegations of negligence set forth in the several causes of action of appellant's complaint by denial thereof, and in addition thereto pleaded the special defense of ''assumption of the risk'' by the deceased and alleged ''that the injuries and death of the deceased arose directly out of and were caused from risks and dangers incident to decedent's employment, which said risks and dangers he had then and there, under and by virtue of the said Federal Employers' Liability Act and other laws, assumed at the time he entered the employment of defendant company''. Upon the issues thus framed the case was tried by a jury.

It was the theory of plaintiff that the deceased went between the cars when they were not in motion, but the rear ''cut'' was sliding back and away from him and the ''cut'' of forty-five cars was standing still. That apparently he went there to close the angle cock which was to, and did, automatically set the brakes on the caboose and rear ''cut'' of cars after they had moved about six feet and stopped them. That the engineer failed to use his automatic air line and hold the forty-five cars attached to the engine, but negligently permitted them to roll back and crush deceased. It was the theory of respondent that it was not guilty of any negligence. That the rolling back of the cars was merely caused by the release of the slack in the string of forty-five cars. That this was an ordinary risk which deceased assumed, and also that any extraordinary risk caused by the negligence of respondent, if any, was also assumed by the deceased. That is, these were the main theories as developed by the evidence of both parties.

The jury returned a verdict in favor of plaintiff in the sum of $35,000. The respondent in due time made a mo-

tion for a new trial on all the statutory grounds. The trial court granted a new trial but did not designate the grounds, the order being general. The plaintiff and appellant prosecutes this appeal, claiming that the trial court abused its discretion.

■ As the order granting a new trial was general we are precluded from considering the question whether or not the evidence is sufficient to sustain the verdict, unless it is wholly insufficient in law and without conflict on any material point. (Code Civ. Proc., sec. 657; *Read* v. *Pacific Electric Ry. Co.*, 185 Cal. 520 [197 Pac. 791].) Respondent claims that the evidence is insufficient as a matter of law to support the verdict. We do not agree with this contention. We conclude that we may not say as a matter of law the evidence is not sufficient to support the verdict within the rule as laid down in *Read* v. *Pacific Electric Ry. Co., supra,* and other cases.

■ Respondent's argument on this branch of the case is that inasmuch as appellant proved the conduct of the deceased immediately before the accident which resulted in his death he was not entitled to the presumption that a person takes ordinary care for his own safety. (Code Civ. Proc., sec. 1963, subd. 4.) There was no eye-witness to the actual crushing of deceased, and appellant did not prove or establish directly, why deceased went between the cars or what was his purpose at the very time of the accident. He was entitled to the presumption as evidence that he did not heedlessly go between the cars, and that he did not see or know of the danger closing in upon him. It was then a matter for the jury to determine from all the evidence, including the presumption, whether the respondent's employees were negligent, and whether this negligence, if any, was the proximate cause of Shaw's death, or whether he had assumed the risk as incident to his employment, that is, whether the accident was caused by an ordinary risk, or if extraordinary, whether he assumed it.

There is considerable seeming conflict in the decisions as to the force and effect of disputable presumptions as evidence. This is due chiefly to the failure to distinguish between inferences and presumptions. The question of disputable presumptions is thoroughly discussed in the case of *Smellie* v. *Southern Pac. Co.,* finally decided since the briefs

were filed in this case, and reported in 212 Cal. 540 [299 Pac. 529] (May 1, 1931). From that case we quote the following:

" 'That a presumption is evidence and may in certain cases outweigh positive evidence adduced against it has long been the settled law of this state. (*People* v. *Milner*, 122 Cal. 171 [54 Pac. 833]; *Sarraille* v. *Calmon*, 142 Cal. 651 [76 Pac. 497]; *People* v. *Siemsen*, 153 Cal. 387 [95 Pac. 863]; *Pabst* v. *Shearer*, 172 Cal. 239 [156 Pac. 466]; *Thompson* v. *Davis*, 172 Cal. 491 [157 Pac. 595]; *Gilmour* v. *North Pasadena Land etc. Co.*, 178 Cal. 6 [171 Pac. 1066]; *Olsen* v. *Standard Oil Company*, 188 Cal. 20 [204 Pac. 393]; *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269]; *Pacific Portland Cement Co.* v. *Reinecke*, 30 Cal. App. 501 [158 Pac. 1041]; *Grantham* v. *Ordway*, 40 Cal. App. 758 [182 Pac. 73, 76].)

" 'A few quotations from the foregoing authorities will, we think, remove all doubt from this question. In *People* v. *Milner*, *supra*, at page 179, the court said, "Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption, it still remained with the jury to say whether or not the fact has been proven; and, if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption." In *Sarraille* v. *Calmon*, *supra*, at page 655, the court said, "The presumption of nonpayment arising from possession of uncanceled notes, admittedly executed by defendant, was evidence that they were not paid, and produced a conflict with the evidence of defendant's witnesses." In *People* v. *Siemsen*, *supra*, at page 390, we find the following language: "But the court, in determining whether or not to accept Mr. Greeley's testimony, had a right to consider the presumptions raised by law. One of these is that 'official duty has been regularly performed'; another, that 'a writing is truly dated' . . . these presumptions, while disputable, are in themselves evidence (citing authorities), and will support a finding made in accordance with them, even though there be evidence to the contrary." In *Pabst* v. *Shearer*, *supra*, at page 242, this court stated the rule as follows: "It must be remembered that a presumption declared by statute, although disputable, is itself evidence, and that it is for the

trial court to say whether the evidence offered to overthrow the presumption has sufficient weight to effect that purpose." In *Thompson* v. *Davis, supra,* at page 493, this court again said: "Under the express provisions of section 164 of the Civil Code, as that section has read since the year 1897, such deed to the wife raised the presumption that the title was thereby vested in her as her separate property. This presumption is, to be sure, not conclusive. 'It may be overcome by evidence sufficient to satisfy the court that the property in question, although conveyed to the wife, was, in fact, community property.' (Citing authority.) But the presumption, 'although disputable, is itself evidence, and . . . it is for the trial court to say whether the evidence offered to overthrow the presumption has sufficient weight to effect that purpose'." In *Olsen* v. *Standard Oil Co., supra,* at page 24, this court sustained an instruction in the following words: "The presumption is that every man obeys the law, and the presumption in this case is that the plaintiff was traveling at a lawful rate of speed and on the proper side of the highway at all times. This presumption is in itself a species of evidence and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence." In *Pacific Portland Cement Co.* v. *Reinecke, supra,* at page 504, we find the following language: "The presumptive evidence of the time of the making of the endorsement and guarantee and the consideration therefor, may be resorted to in aid of the findings, even though it be assumed as counsel for the defendant contends, that it stands alone and was opposed by direct evidence to the contrary. The general rule that, as against a proved fact, or a fact admitted, a disputable presumption has no weight, is subject to the exception that where, as in the present case, an endeavor is made to establish a fact contrary to the presumption, the fact in dispute still remains to be determined upon a consideration of all of the evidence, including the presumption." In *Mar Shee* v. *Maryland Assur. Corp., supra,* at page 7, this court has again said: "There seems to be some confusion in the decisions of this state with respect to the extent to which, under various circumstances, presumptions of law are to be regarded as evidence of facts. The code expressly declares them to be evidence (Code Civ. Proc., secs. 1957, 1963), and admonishes the trial

judge to instruct the jury on all proper occasions 'that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a . . . presumption', (Code Civ. Proc., sec. 2601, subd. 2.) Among the decisions of this court recognizing and applying the foregoing rule may be mentioned the following: *Sarraille* v. *Calmon,* 142 Cal. 651 [76 Pac. 497]; *Adams* v. *Hopkins,* 144 Cal. 19 [77 Pac. 712]; *Moore* v. *Gould,* 151 Cal. 723 [91 Pac. 616]; *People* v. *Siemsen,* 153 Cal. 387, 390 [95 Pac. 863]; *Freese* v. *Hibernia Sav. etc. Soc.,* 139 Cal. 392 [73 Pac. 172]; *Gilmour* v. *North Pasadena Land etc. Co.,* 178 Cal. 6 [171 Pac. 1066].' "

And at page 795: "It is argued by the defendants that since the statute itself (sec. 1963, Code Civ. Proc.), before enumerating the disputable presumptions, declares that said presumptions 'are satisfactory, if uncontradicted' and that they 'may be controverted by other evidence', it must follow that if they are contradicted or controverted they fade out and disappear from the case. As has been seen they do disappear when contradicted or controverted by the evidence of the party relying upon them, with the qualification stated in the Mar Shee case, but it is not correct to say that under the code section and the effect given to it by the court they vanish from the case as a matter of law when contradicted or controverted by the party against whom they are invoked. In such case their guiding and compelling effect is undermined and diminished or destroyed to the extent that they are controlled by the facts as found to exist."

▮ This case we think disposes of respondent's contention on this point of the case adversely to it.

From what has been said it follows that the court did not err in refusing to grant a nonsuit, or in its refusal to direct a verdict in favor of respondent. However, as said in *Biaggi* v. *Ramont,* 189 Cal. 675, at 681 [209 Pac. 892, 895], "on an appeal from an order granting a new trial the action of the trial court will not be disturbed if upon any hypothesis it can be sustained".

▮ It is contended that it was error to admit evidence, over objection of respondent, as to the custom of the method of stopping trains at the place in question several years prior to the accident, and to deny the motion to strike this

testimony. It was admitted subject to the promise to connect it up by showing that the same custom was used at about the time this accident took place. This was not done. We think the motion made to strike this testimony should have been granted. Appellant in a supplemental brief cites *McComb* v. *Atchison, T. & S. Fe R. Co.*, 110 Cal. App. 303 [294 Pac. 81], in regard to proof necessary to prove a custom. This case merely goes to the *quantum* of proof necessary to prove a custom and is of no aid to him in the instant case.

It is next contended that it was error to permit the witness W. H. Sheasby to testify as an expert in regard to the principle relating to the equipment of box-cars and the application of the principles of equipment to the operation of the train. We have examined the record in this connection and find no prejudicial error. In *Union C. Co.* v. *Madera Irr. Co.*, 179 Cal. 774, at 779 [178 Pac. 957, 960], it is said: "Whether a witness is qualified as an expert is to be determined in the first instance by the trial court, and in so deciding the trial court has a wide range of discretion. (*Howland* v. *Oakland C. S. Ry. Co.*, 110 Cal. 513, 521 [Ann. Cas. 1912D, 817, note 42 Pac. 983].)" And it seems he testified to some matters on which it was proper to enlighten the jury. (*Fonts* v. *Southern Pac. Co.*, 30 Cal. App. 633 [159 Pac. 215], and cases therein cited.)

It is next claimed by respondent that the court erred prejudicially in giving certain instructions. With this contention we agree. The court gave at the request of appellant instruction No. 19 as follows:

"You are hereby further instructed that under the law every person is presumed to take ordinary care of his own concerns, and that because of the instinct of self preservation he will exercise due care and caution for his own safety, *and such presumption can only be controverted by convincing evidence to the contrary, but unless so controverted, the jury are bound to find according to the presumption.*"

While the thought expressed in this instruction was proper, the language used to convey it was erroneous, and in this particular case highly prejudicial. The word "convincing", while used in this instruction in a descriptive sense, was bound to be understood by the jury to mean

that their minds must be convinced absolutely. The word "convince", according to Webster's Dictionary, means "to overcome by argument"; "to prove the fallacy of a thing"; "to prove or demonstrate". The word itself is superlative —that is, it means the utmost degree or highest degree. In *Murphy* v. *Waterhouse*, 113 Cal. 467, at 473 [54 Am. St. Rep. 365, 45 Pac. 866, 867], it is said: "In a civil case it is error to tell the jury that there must be evidence sufficient to convince their minds of any fact necessary to be shown by either party. The weight of evidence or preponderance of probability is sufficient to establish a fact in a civil case." (See, also, *Hutson* v. *Southern Cal. Ry. Co.*, 150 Cal. 701, at 705 [89 Pac. 1093].)

This instruction also contains the following erroneous language: *"because of the instinct of self preservation"*. This introduces an element of argument into the instruction. Section 1961 of the Code of Civil Procedure provides: "A presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless so controverted the jury are bound to find according to the presumption." Any instruction on this presumption should not go beyond the code section. The giving of this instruction just discussed was prejudicial error alone sufficient to support the order of the trial court.

█ However, there were other erroneous instructions given and in view of the new trial that must be had in this case we may say that the instructions complained of should not be given in the form in which they were given. We refer first to instruction number 12, upon the doctrine of the assumption of risk and burden of proof. The only burden that was upon the respondent was to show that the risk and danger which resulted in Shaw's death was one of the ordinary risks and hazards, or an extraordinary risk and hazard of which deceased knew, or which in the exercise of ordinary care he should have known. (*Gila Valley G. & N. R. Co.* v. *Hall*, 232 U. S. 94 [58 L. Ed. 521, at 542, 34 Sup. Ct. Rep. 229].)

█ Second, the instruction number 7, relating to the violation of the order of the Interstate Commerce Commission. It seems the jury should first determine whether the movement was a switching operation or trip run, al-

though it seems clear to us that it was a trip run, and then whether the order was violated. It would be better to have the instruction cover both elements clearly.

 Third, the word "proper" should not be used in defining the care to be exercised by the respondent. There are some other instructions discussed, but we do not deem it necessary to express any opinion upon them. Neither need we discuss the question of excessive damages.

 Finally, appellant refers to section 4½, article VI, of the Constitution, which provides: "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

This provision is a limitation on the power ·of the trial court, but when that court has acted and granted a new trial, we must presume that the trial court did consider the whole record and decided that it had committed prejudicial error, and unless an inspection of the record convinces us that it is otherwise, we will not disturb the order.

In the case of *Montgomery* v. *Globe Grain & Milling Co.*, 109 Cal. App. 695, at 699 [293 Pac. 856, 858], it is said:

"It is a well-settled rule of law in California that an erroneous instruction given by the court to the jury is an error of law that is considered excepted to as a matter of law. · (Sec. 647, Code Civ. Proc.) While an instruction gives the law of the case to the jury, its applicability, and oftentimes its correctness, depends upon the evidence in the case. An instruction should not be considered as merely an abstract statement of a principle of law, but it must relate to and be measured by the circumstances of the case in which it was given. To determine the question of whether there was any error in giving it frequently requires an examination of the evidence in the case. (*Hamlin* v. *Pacific Elec. R. Co.*, 150 Cal. 776 [89 Pac. 1109]; *Shipley* v. *San Diego Elec. R. Co.*, 106 Cal. App. 659 [289 Pac. 662]. . . . *Sullivan* v. *Market Street R. Co.*, 136 Cal. 479 [69 Pac. 143].)"

And in *Campanella* v. *Campanella,* 204 Cal. 515, at 522 [269 Pac. 433, 436], we find the rule applicable here expressed as follows:

"We are mindful of the rules here applicable expressed in *Scott* v. *Times Mirror Co.,* 178 Cal. 688, 690 [174 Pac. 312, 313], as follows: 'It is the well-settled rule of this court that when the order of the trial court in granting a new trial is general in its terms, it will be affirmed if it could properly have been granted upon any of the grounds upon which the motion for it was predicated (*Weisser* v. *Southern Pac. Ry. Co.,* 148 Cal. 426 [7 Ann. Cas. 636, 83 Pac. 439]; *Morgan* v. *J. W. Robinson Co.,* 157 Cal. 348 [107 Pac. 695]). It is an equally well-settled and long-established rule of this court that an order granting a new trial will not be disturbed upon appeal except upon a showing of clear and manifest abuse of discretion on the part of the trial court in respect to granting the same. (*Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156 [47 Pac. 1019]; *Doolin* v. *Omnibus Cable Co.,* 125 Cal. 148 [57 Pac. 774]; *Sherwood* v. *Kyle,* 125 Cal. 652 [58 Pac. 270]; *Lee* v. *Southern Pac. R. R. Co.,* 101 Cal. 118 [35 Pac. 572]; *Meinberg* v. *Jordan,* 29 Cal. App. 760 [57 Pac. 1005, 1007].)' "

It follows from what has been said that the order granting the new trial in this case must be and it is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 24, 1932, and an application by appellant, to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 21, 1932.