[Civ. No. 4739. Third Appellate District.—March 10, 1933.]

A. ROBERT BOCKWICH, Administrator, etc., Respondent, v. GEORGE A. GARLOW, Appellant.

G. C. Watson for Appellant.

C. F. Culver for Respondent.

BURROUGHS, J., *pro tem.*—This is an action by the administrator of the estate of Frank B. Morris, deceased, to foreclose a mortgage. The decree of foreclosure was regularly entered, and the defendant George A. Garlow has appealed therefrom.

The only question presented for the consideration of the court is the sufficiency of the evidence to support the court's finding of fact: "That it is not true that the defendant, George A. Garlow, paid the principal sum of $1500.00 or accrued interest from November 1, 1928, to the said Frank B. Morris, on or about the 18th day of April, 1929, or otherwise, and nothing has been paid on account of said promissory note except the said sum of $1000.00 and the interest to November 1, 1928."

In support of the action plaintiff produced and introduced in evidence a promissory note in the principal sum of $2,500, and a real estate mortgage securing the same. Both were signed "George A. Garlow", and were made in favor of

Frank B. Morris. The execution of both instruments by the plaintiff was admitted. The payment of the sum of $1,000 on the principal thereof, together with interest on the whole sum to May 1, 1928, was admitted by the plaintiff, who thereupon rested his case.

The appellant testified in his own behalf that he paid Frank B. Morris the balance of $1500 due on said note, with the accrued interest then due, in cash on April 18, 1929, three days before the death of Mr. Morris. He detailed the circumstances of the payment as follows: "Mr. Morris was down there visiting my son and his wife. My son lives on the same block with me. When he came home, he came in to see me, through the back door, the kitchen door. I was washing dishes in the kitchen. When I got through we went in the dining room and I went and paid him. I said, 'Morris, I intended to pay you on the first of May and I have cash and I will pay you,' and I paid him. He said in a day or two he would lay off from his labor and have the mortgage released and returned. I made a notation of that on the old receipt, and he accepted it. Mr. Morris was very peculiar about writing any papers. He was a very peculiar man. He was a very ignorant man and did not understand business matters. He said, 'Why not put it on the old receipt?' So I went and got the old receipt and put it on the old receipt. Q. Did you write it on the old receipt in his presence? A. Yes, I did."

The defendant further testified that he had many business deals with Mr. Morris, and that some were handled by cash and some by checks; that it was his habit to keep considerable sums of money on hand; that the payment of $1,000 which he had previously made on the note was by check, and that he took a receipt. There was testimony by two other witnesses that they had seen defendant with some currency in his possession, but neither of them knew the amount.

John Yates, a witness called on behalf of appellant, testified that he had been well acquainted with Morris for about twenty-five years, and that the night before Morris died, the witness met him on the street, and they had a conversation as follows: "A. Why, he asked me to come up to-night —up to his house; he said he was going to have a hell of a time. He had a little schnaps and Mr. Garlow had paid

him $1500.00. I said, 'Frank, I am very sorry, but I can't go up, I am tired out.' He said—I said, 'Who is going to be there?' and he told me the nurse was going to be there and he wanted me to be there.'' This is the substance of the evidence offered by the defendant.

In rebuttal, Mrs. Sue H. Keller, who was a clerk in the office of C. F. Culver, the attorney for the plaintiff, testified that the defendant, George A. Garlow, visited the office of her employer some time in July, 1929, and that he showed them a receipt which he claimed was a receipt from Morris when he made his final payment on the $2,500 note in controversy. She further testified that it was a straight receipt for a certain sum of money; that there was no insertion in the receipt, and it was not in the form of the old receipt to which the defendant testified as above set forth.

A. Robert Bockwich, the administrator of the estate of the decedent, testified that he visited the home of the deceased the morning following his death, but was unable to obtain admission. Believing that something was wrong, he, with others, broke into the house and found the dead body of Morris; that there was no money on his person, and later a thorough search was made of the house and no money was found therein; that the deceased kept accounts in two banks, and that there had been no deposit of the money which the defendant claimed to have paid to him; in fact, there had been an investigation carried on with the utmost diligence and care, and no money had been discovered. This constituted the substance of the evidence offered on the question of payment.

It is contended by the appellant that this case comes within section 1844 of the Code of Civil Procedure, which provides that: ''The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason.'' From this section he argues that as the only direct evidence is that of the appellant, who testified to the payment of the note, supported by the evidence of the witness Yates, as to the admission made by Morris, there can be no question but that the above-mentioned finding is not only not supported by the evidence, but is contrary to it. However, appellant has overlooked well-established principles of law which sustain the findings of the court and the judgment in this case.

When the plaintiff introduced the note and mortgage, with the stipulation that it had been executed by defendant, he established a *prima facie* case. The presumption then arose that the debt had not been paid. (*Griffith* v. *Lewin,* 125 Cal. 618 [58 Pac. 205]; *Collins* v. *Maude,* 144 Cal. 289 [77 Pac. 945].) While this presumption is disputable, it is evidence, and is sufficient, even against the positive testimony of witnesses.

In *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529, 532], it is said: "That a presumption is evidence and may in certain cases outweigh positive evidence adduced against it has long been the settled law of this state."

In the case of *Sarraille* v. *Calmon,* 142 Cal. 651 [76 Pac. 497], it is held: "The possession of a note by the plaintiff is presumptive evidence of nonpayment which may outweigh positive testimony in reference to payment, and produces a sufficient conflict in the evidence to support a finding of nonpayment in favor of the plaintiff." It is further said in this case: "We cannot put ourselves in the shoes of the judge who had the witnesses before him; we cannot say to what extent he discovered what he thought were inherent improbabilities in the statement of witnesses, nor can we say how far the witnesses, by their manner of testifying, may have given rise to doubts of their sincerity, or may have impressed the judge with their having given a wrong coloring to the material facts."

In view of the evidence above set forth and the rules of law above referred to, it is clear that the plaintiff made a *prima facie* case, and if the trial court, in the exercise of the power vested in it, concluded that the direct evidence of the defendant and his witnesses, was overcome by such *prima facie* showing, or by other circumstances connected with the case, we are not in a position to question the conclusion of the trial court. The story of the defendant himself seems on its face somewhat improbable. It is very unusual for a man to carry around such large sums of money, or to pay without taking a receipt. Further, the testimony of Mrs. Keller that the defendant produced a receipt, or what he claimed to be a receipt for the payment of the money, given at the time of the settlement of the note, and his subsequent denial of having such a receipt,

would tend to throw discredit on his testimony. However, these were matters for the trial court, and we must conclude that it acted upon sufficient evidence, and the judgment must be affirmed. It is so ordered.

Plummer, Acting P. J., and Thompson, J., concurred.