[Civ. No. 4480.   Fourth Dist.   Jan. 19, 1954.]

WELLS TRUCKWAYS, LTD. et al., Respondents, v. AL-
FONSO CEBRIAN et al., Appellants.

Tipton, Weingand & Tipton for Appellants.

John Lewis King and J. B. Lawrence for Respondents.

GRIFFIN, J.—As a result of a jury trial plaintiff Wells Truckways, Ltd., was given judgment for $18,864.32 against defendants for damage occurring to plaintiff's tractor and trailer when defendant Cebrian's tractor and trailer, driven by defendant Donahue, collided with it on Highway 99 near Whitewater, about 9:30 p. m. on January 8, 1950, as a result

of which Louis Richter, the driver of plaintiff's tractor and trailer, was killed. Defendants failed to recover on their cross-complaint.

Richter was proceeding easterly on Highway 99, about 1.2 miles east of the junction of that highway with State Highway No. 11. Donahue was proceeding in a westerly direction. The concrete pavement was 20 feet wide, with a white center line indicated. There was an additional 7-foot oiled gravel shoulder on each side of the highway. The road near the point of impact runs generally east and west. For approximately 1 mile to the east of that point proceeding westerly, there is a general descent in grade, and approximately 200 yards east of the point of the accident there is a 4.6 per cent descent grade with a slight curve to the north or to the right as one approaches that point from the east. There is evidence that the curved highway did not slope to the right or north side of it but rather sloped to the south or the left to permit drainage.

The vehicle driven by Donahue carrying perishable vegetables (including crated lettuce) destined for Los Angeles market, was described as a 1945 Kenworth tractor with a box-type, 35-foot utility van. The power unit that pulled the trailer had two rear axles, and the box trailer which the tractor pulled rested on the back of the tractor on a plate or fifth wheel. This plate carried the weight of the trailer. The front end of the trailer, when detached, was prevented from hitting the ground by means of a landing gear on each side of the trailer box but under the trailer. These gears were of solid metal disc wheels about 10 inches in diameter, each carrying two wheels about 12 inches apart. When the trailer was resting on the fifth wheel of the trailer the clearance between the bottom of the landing gear wheel and the surface of the road was approximately 18 inches.

Plaintiffs' equipment was similar in size and general construction but had an open top covered with canvas, and was loaded with general freight. The night was disagreeable in that it was raining and there was a heavy wind blowing in the same direction defendants' truck was proceeding.

It is plaintiffs' contention that as the two tractors were about to pass each other each was on its respective proper lane on the highway but that Donahue was proceeding too fast in the wind and rain, downhill, and on an unbanked curve, and as a result of which the truck portion of his outfit

swerved over or came over the center line into the pathway of plaintiff's truck and that the front left portion of plaintiff's tractor collided with it and then swerved over to its right or the south side of the highway, struck a large boulder, and crashed, resulting in the damage alleged.

It is further contended that as a result of the collision the trailer of defendants' truck became disconnected with the tractor; that the landing gears on it hit the highway and the two wheels on the left gear broke and the remaining structure left unbroken gouge marks in the paved highway from the point where they hit to the point where the trailer finally stopped; that these two gouge marks, about 12 inches apart, commenced in the northerly lane of the highway on the Donahue one-half thereof, and the left one commenced about 15 inches from the center white line and continued in a gradual swerving line northerly across the north one-half of the highway for about 330 feet to a point where the trailer finally turned over and stopped off the north portion of the paved highway and on the oiled shoulder. The south gouge mark paralleled the white center line for about 40 feet and varied from 15 to 18 inches. The evidence showed that the left and right landing gear wheels were inset a distance of 18 inches from the outer edge of the trailer box. The length of the trailer box was 35 feet and its width was 8 feet. The distance between the place of attachment of the landing gear and the back end of the trailer box is 23 feet. The set of rear wheels on defendants' trailer was completely knocked out from under it. Photographs of the general terrain, the highway, the debris thereon, the demolished trucks, the gouge marks on the highway, and lettuce from broken-open crates on both sides of the highway, were received in evidence after proper foundation was laid.

It is defendants' contention that Richter was coming around the curve; that each driver was traveling between 35 and 40 miles per hour and each was in his own lane of traffic about 12 to 18 inches from the white center line, but that Richter must have come over into Donahue's lane to some extent with his tractor and trailer after the tractor had passed Donahue's tractor, and struck the defendants' trailer near the center side loading door with the front portion of plaintiff's tractor, and that this was the proximate cause of the accident.

Donahue testified that after the impact he felt the trailer come forward over the tractor and it caved in the cab on it and then later dropped to the highway on the landing gear

and the tractor continued on down the highway at about 10 miles per hour.

Since Richter was killed in the accident plaintiffs did not receive the benefit of his testimony. They rely upon the testimony of Donahue, the presumption that Richter exercised due care, and the circumstantial evidence related, as shown by the photographs, and particularly the testimony of a California highway patrol officer who, after qualifying as an expert witness, testified for plaintiffs in relation to what he saw at the scene of the accident and as to his opinion as to what actually happened in relation to the position of the trucks on the highway.

The main objection here presented goes to the question of the opinion of the witness testifying as an expert, in this respect, based upon the gouge marks indicated, the location of the trucks, the tracks of the tires, the position and damage to the tractors and trailers after the collision, and the surrounding circumstances above related. The witness drew many diagrams on the board illustrating what he saw there in reference to the gouge marks, the curve in the roadway, the position of the tractors and trailers after the accident, as well as the general position of the landing gear in relation to the trailer hookup.

The following questions propounded to the witness by plaintiff's counsel were strenuously objected to by defendants' counsel on the ground that no foundation had been laid, that the opinions attempted to be elicited were nothing but conclusions of the witness based upon assumed facts and were ultimate facts which were to be determined by the jury. In overruling the objections the court admonished the jury generally that by reason of certain training or experience certain witnesses were offered by counsel in a trial as experts; that their testimony was admitted with the admonition to the jury that it could give it such credit as it felt it was entitled to, after hearing the reasons expressed by the alleged expert as to why he had that opinion; and that the jury might disregard it in favor of its own opinion, after hearing the evidence, if it did not feel his reasons were sufficient. The questions complained of are:

(1) "Were you able to determine whether or not those gouge marks were made when the landing gear was going parallel to the white line, or was it angling?" The witness was permitted to answer: "They were angling." The witness Donahue testified that these gouge marks were made by the

broken landing gear on the left side of his trailer. We see no objection to the testimony of this witness in this respect. It did not need an expert witness to determine this fact. The photographs in evidence fully disclose it.

(2) "Were you able to form an opinion of your own as to the approximate degree of angulation of the trailer at the time the marks were made?" Over objection the witness testified that in his opinion the trailer was at an approximate 20-degree angle at the time the marks were made.

(3) This question was followed by the question: "If there was a 20-degree angle of the trailer at the time of the commencement of the marks, do you have an opinion as to whether or not that would have projected the rear end of the trailer across the white line onto the south side of the road?" Over objection the witness answered: "It is my opinion that it would have projected the trailer to the wrong side of the road."

(4) The next question was: "Based upon the testimony you have already given as to the length of the trailer and the distance between the landing gear and the rear end of the trailer, do you have an opinion as to how far the rear end of the trailer would have been projected across the white line onto the south side of the road?" Over objection it was answered: "It is my opinion . . . that there was approximately 23 feet angulation to the left side of the roadway at the time of the impact."

(5) This answer was explained by a diagram on the blackboard which the witness drew and to which the same objection was made.

(6) The question was then reiterated in different form and it was specifically sought to elicit how far the extreme edge of the trailer protruded over the center white line. The substance of the answer to this question was that in his opinion the complete trailer, up to the landing gears, was on the wrong side of the roadway.

(7) The witness was thereafter asked where the Donahue trailer was hit. He stated that on that matter he could testify as to a fact rather than an opinion, and described the damage done to it.

(8) After this description he was asked whether he had an opinion as to the original point of impact. Objection was interposed but it was overruled.

(9) Thereafter the question was asked as to whether or not the witness had an opinion approximately how far south

of the white line the door of the Donahue trailer was at the time of the original impact. Objection was again interposed and the witness stated that in his opinion the door was 3 feet south of the white line.

(10) The witness was further asked whether he had an opinion as to the direction of the force that had damaged the gas tank on the Cebrian truck, to which he answered over objection that it was damaged from the top down.

(11) It was then established by pictures that the cab on the Cebrian truck was shoved forward from its normal position, and the witness was then asked whether he had an opinion as to the direction of the force that had damaged the cab. Again over objection he said that it was damaged from the rear forward.

(12) The witness was then asked whether he formed an opinion as to what had damaged the cab and the gas tank of the Cebrian truck, to which he answered, again over objection, that in his opinion the damage was caused by the Cebrian trailer coming against the Cebrian tractor.

The general rule is that witnesses must testify to facts, and not opinions, and that whenever the question to be determined is the result of common experience of a man of ordinary education or is to be inferred from particular facts, the inference is to be drawn by the jury, and not by the witness. (*Burch* v. *Valley Motor Lines, Inc.*, 78 Cal.App.2d 834, 839 [179 P.2d 47].) Section 1870, subdivision 9 of the Code of Civil Procedure provides that the opinion of a witness is admissible "on a question of science, art, or trade, when he is skilled therein," because it deals with matters not presumably within the common knowledge of men, and where the opinion is proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue.

The question here presented for decision is whether the testimony produced was within the general rule or whether it was within the purview of section 1870, subdivision 9 of the Code of Civil Procedure. Expert testimony has been uniformly sanctioned as proper in many instances, particularly in jury trials, for the crystallization of intelligent and just results. Under the common law the admissibility of the opinion of experts upon matters within the field of their knowledge was well established. Section 1870, subdivision 9, *supra*, is but a legislative enactment of the common-law rule. (*Estate of Toomes*, 54 Cal. 509, 513 [35 Am.Rep.

83].) ■ The testimony of an expert is admissible because a man's professional pursuit, his peculiar skill and knowledge in some department of science not common to men in general, enable him to draw an inference where men of common experience, after all the facts are proved, would be left in doubt. (10 Cal.Jur., pp. 957-958, § 216.) ■ Rarely, if ever, does an expression of opinion by a so-called expert not amount to that which either the court or jury might adopt as a basis for the ultimate decision in the case. However, that does not mean that the witness is deciding the case or that in so testifying he is usurping the functions of the jury. He is merely giving an opinion, based upon his technical training, which the court may or may not accept as testimony that is proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue. (*Fonts* v. *Southern Pac. Co.*, 30 Cal.App. 633, 641 [159 P. 215].)

Here, as in *Lemley* v. *Doak Gas Engine Co.*, 40 Cal.App. 146 [180 P. 671], the ultimate question which the jury had to answer was whose negligence, if any, caused the collision or contributed thereto. It was there held that in ascertaining the answer to the main question, the subsidiary or secondary inquiry in reference to expert opinion evidence as to a defective condition of a certain drawbar was relevant and proper provided the answer to the secondary question might aid the jury in answering the first.

In *People* v. *Haeussler*, 41 Cal.2d 252 [260 P.2d 8], where a traffic officer who had had many years of experience in investigating automobile accidents, similar to the experience had by the officer in the instant case, and who, with reference to the point of impact of two vehicles involved in the collision, based his opinion on an inspection of skid and gouge marks on the pavement and location of oil, broken glass, parts of vehicles and other debris, it was held that he was an expert and might testify as to his opinion regarding the point of impact. *Zelayeta* v. *Pacific Greyhound Lines, Inc.*, 104 Cal. App.2d 716 [232 P.2d 572], is to the same effect and cited with approval.

In *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195 [215 P. 675], the testimony of an expert witness was held to be admissible for the purpose of showing the distance within which a Dodge car, going 20 miles per hour, could be stopped. It was there held that the fact sought to be shown was not a matter of such common knowledge as to preclude the admission of expert testimony. (See, also, *How-*

*land* v. *Oakland Consolidated St. Ry. Co.*, 110 Cal. 513 [42 P. 983].) In the same case it was held that a qualified expert could testify whether the damage to the truck, as shown by the evidence, could have been caused by the Dodge car traveling at 20 miles per hour. Cases are collected in *Zelayeta* v. *Pacific Greyhound Lines, Inc.*, *supra*, page 727, discussing this subject. There are several cases cited holding that a garage mechanic cannot testify, based on facts set forth in a hypothetical question, as to the probable course of two colliding automobiles after the impact; or, as to the speed of two colliding cars; or which one was traveling faster; or as to whether an accident could have been avoided under certain circumstances; but that the cause or starting point of a fire may be the subject of expert testimony; and that such a witness may be permitted to testify that a certain mark on the highway appeared to have been made by a "free running wheel." In that case *Stuart* v. *Dotts*, 89 Cal.App.2d 683 [201 P.2d 820], was cited by appellant. There a police officer was permitted at the trial to give his opinion as to whether a collision between an automobile and a pedestrian occurred within or without a certain crosswalk. It was held that the introduction of such testimony was error, not because the subject matter of the question was not a proper subject of expert testimony, but because a proper foundation was not laid. Many such conflicting cases are collected in annotations in 66 American Law Reports 1117; 70 American Law Reports 540; and 94 American Law Reports 1190.

As pointed out by defendants, there is a group of cases similar to *Fishman* v. *Silva*, 116 Cal.App. 1 [2 P.2d 473], where an opinion as to the probable course the respective cars would take after the impact was rejected upon the ground that there were too many varying factors lacking, where the witness, who was not an eyewitness, attempted to reconstruct what had happened from the position of the cars after they came to rest. In many of the cases important elements were omitted. The cases relied upon are *Johnston* v. *Peairs*, 117 Cal.App. 208 [3 P.2d 617]; *Linde* v. *Emmick*, 16 Cal.App.2d 676 [61 P.2d 338]; *Moore* v. *Norwood*, 41 Cal. App.2d 359 [106 P.2d 939]; and *Moniz* v. *Bettencourt*, 24 Cal.App.2d 718 [76 P.2d 535].

In *Burch* v. *Valley Motor Lines, Inc.*, 78 Cal.App.2d 834, 840 [179 P.2d 47], many of the cases relied on by defendants, as well as other cases, are discussed and differentiated.

■ The fact that the expert testimony sought to be produced involves vehicle accidents, as opposed to opinions of experts peculiar to the cause of a particular fire or of a medical expert's opinion as to the nature of the agency or instrument which may have produced a physical injury, or of the construction of the force of a blow as evidenced by an X-ray picture of injured bones, cannot be differentiated provided the nature of the evidence to be interpreted by the expert comes within the rule announced. (*Baltimore & Ohio R. Co.* v. *Schultz,* 43 Ohio St. 270 [1 N.E. 324, 54 Am.Rep. 805]; *Manney* v. *Housing Authority,* 79 Cal.App.2d 453, 460 [180 P.2d 69].)

■ Some distinction is noted in reference to the admission in evidence of opinions of experts based upon facts related to them in a hypothetical question, and of opinions of experts or nonexperts when testifying about facts they have personally observed, as was done in the instant case. Either form of such evidence has been held admissible when complying with the tests indicated. (7 Wigmore on Evidence, 3d ed., pp. 1-29; *Manney* v. *Housing Authority, supra,* p. 459.) ■ Applying these rules to the facts in the instant case it cannot be said that the answers sought by the questions propounded to the witness, whether expert or nonexpert, necessarily invaded the province of the jury in its determination of the ultimate issue, i. e., whether plaintiffs should recover for the negligence of the defendants. The position of the tractor and trailer on the highway at the time was one of the facts to be decided, either by eyewitnesses or by the facts and circumstances, aided by the opinion of expert witnesses, if the proper foundation was laid.

The question of the general qualifications of the witness to testify generally as an expert witness in reference to automobile accidents is not disputed. The evidence shows that the highway patrol officer had had many years of experience in investigating accidents on the highway; that he had been with a railroad company and acted in this capacity; had acted as an investigating officer in the United States Army in respect to accidents; and that he had investigated "considerably more than" 100 accidents in 14 years of such work. It further appears that the witness arrived at the scene of the accident here involved within 30 minutes after it happened and was testifying from facts which he had related to the jury and which he obtained from his personal observation at the time.

Whether the witness showed sufficient qualifications to express the opinion related in reference to the degree of angulation and other such deductions from the facts related may be questioned. He was examined in reference to his qualifications and the trial judge expressed himself as being satisfied with his general qualifications to testify on the subject under discussion at the time. As to his opinion regarding the point of impact, he stated he based it on his observation of the damage incurred to the trailer; from the angle in which the metal was broken and torn on each piece of equipment; from the angle in which the trailer was torn from the rear axles; the gouge marks in the highway; the dirt and debris knocked loose from the respective vehicles; the oil spots; and from what he there saw; and that from the facts related he was capable of expressing an opinion on the subject about which he was interrogated.

Plaintiff makes no point in its brief in respect to lack of showing of qualification of the witness. ▮ The qualification of a witness to testify as an expert is a matter within the sound discretion of the trial court, and where there is no showing of a clear abuse of that discretion, the ruling of that court will not be disturbed on appeal. ▮ Where the witness has disclosed a sufficient knowledge of the subject to entitle his opinion to go to the jury the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility. (*People* v. *Haeussler,* 41 Cal. 2d 252 [260 P.2d 8]; *Pitt* v. *Southern Pac. Co.,* 121 Cal.App. 228, 236 [9 P.2d 273]; 10 Cal.Jur. 963, § 220.)

Assuming, therefore, the qualifications of the witness to relate the opinions expressed, the only question remaining is whether the witness was possessed of sufficient facts and information to express those opinions, whether the evidence was of such a character as to indicate the necessity of and require an interpretation for the benefit of the jury, whether it was proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue, and whether or not the facts sought to be shown by the expert were matters of such common knowledge as to preclude the admission of expert testimony.

▮ Here, the circumstantial evidence was not necessarily self-explanatory to the layman's eye. It was reasonable for the trial judge to believe that the jurors needed aid, even if they had been at the scene of the accident that night, to

ascertain the clues leading to the conclusions reached. It was therefore proper, if the required facts were established, to admit the opinion of the expert, based on those facts in evidence, which he personally knew, for the consideration of the jury, if the opinion, because of the witness' particular knowledge and experience, could aid the jury in drawing correct inferences from the raw and unsorted facts. Of course, as the court instructed the jury, it was entitled to give the opinion such credit as it felt it was entitled to receive; and the jury was not bound to accept such opinion and might even totally disregard it in favor of its own opinion, based on the facts adduced by the evidence if it did not feel that the reasons given by the expert were sufficient.

In 20 American Jurisprudence, page 654, it is stated that:

"It is certainly contrary to the unmistakable trend of authority to exclude expert opinion testimony merely upon the ground that it amounts to an opinion upon ultimate facts. The modern tendency is to make no distinction between evidential and ultimate facts subject to expert opinion. The courts consider that it is more important to get to the truth of the matter than to quibble over distinctions in this regard which are in many cases impracticable."

We conclude that the trial court committed no error in admitting the opinion evidence.

The instant action was consolidated for trial with an action instituted by the widow and children of the deceased Louis Richter against these same defendants for wrongful death. In that action plaintiffs recovered a judgment. Before the appeal was perfected in that case it was dismissed under rule 17(a) of the Rules on Appeal.    Defendants now complain because the trial court gave plaintiff's instruction in the consolidated action which reads in part as follows:

". . . that although the plaintiffs have the burden of proving the allegations of negligence that they have made, this burden is carried and fulfilled by the plaintiffs if from the entire evidence you are able to conclude that the greater probability of truth supports the plaintiff's contention that the defendants were negligent and that this negligence was a proximate cause of the accident. In this connection you are reminded that the presumption that a deceased person exercised due care for his own safety is in itself evidence and you are to consider this presumption together with all

the rest of the evidence in determining the issues of negligence and contributory negligence in this case.''

Defendants' complaint is that this instruction, in effect, told the jury that the presumption of due care created an inference or authorized the presumption that the defendants were negligent and accordingly was erroneous, citing *Gardner* v. *Seymour,* 27 Wn.2d 802 [180 P.2d 564].

Defendants endeavor to distinguish a similar instruction given in *Woodward* v. *Southern Pac. Co.,* 35 Cal.App.2d 130 [94 P.2d 1028], which instruction was held proper after a similar complaint. We perceive no distinction and the case relied upon by plaintiff supports the authority of the court in giving the instruction about which complaint is here made. (See, also, *Wiswell* v. *Shinners,* 47 Cal.App.2d 156 [117 P.2d 677]; and *Wahrenbrock* v. *Los Angeles Transit Lines,* 84 Cal. App.2d 236 [190 P.2d 272].)

Lastly, it is argued that although there was a presumption of due care in favor of Richter which extended to his widow and children, such presumption did not extend in favor of Richter's employer in a parallel suit in an action to recover damages to the truck and cargo. No authority is cited in support of the argument. That the presumption extends to the surviving spouse and children is sufficiently established in *Wahrenbrock* v. *Los Angeles Transit Lines, supra; Paulsen* v. *Spencer,* 78 Cal.App.2d 268 [177 P.2d 597]; and *Wiswell* v. *Shinners, supra.* Since the jury was properly authorized to draw this deduction from the facts established by the evidence in the companion case involving Richter's widow and children, no basis or logical argument is presented why the jury was not authorized to consider this same presumption from the same facts when Richter's employer, the owner of the equipment, is plaintiff and is seeking recovery for damages resulting to its trailer and tractor, which was driven by its duly authorized agent in the course of his employment and with plaintiff's permission. See section 402, subdivision (a), Vehicle Code; *Milgate* v. *Wraith,* 19 Cal.2d 297 [121 P.2d 10]; *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590]; and *Boellaard* v. *Crabbe,* 41 Cal.App.2d 792 [107 P.2d 951], where it was held that the presumption that a deceased driver exercised due care for his safety is broad enough to embrace the safety of the other occupants of the automobile where it is sought to impute the driver's negligence to the occupants. (See, also, 7 Cal.Jur.2d 323, § 402.)

■ Regardless of this conclusion defendants may not now be heard to complain for the first time on appeal, since the instruction was applicable to the companion case and defendants made no request for an instruction limiting its application to the other action. (*Liebrandt* v. *Sorg,* 133 Cal. 571 [65 P. 1098] ; *Craig* v. *Boyes,* 123 Cal.App. 592 [11 P.2d 673] ; *Gajanich* v. *Gregory,* 116 Cal.App. 622 [3 P.2d 389].)

Judgment affirmed.

Barnard, P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 17, 1954. Edmonds, J., and Traynor, J., were of the opinion that the petition should be granted.