[L. A. No. 28382.   In Bank.   June 28, 1965.]

MAGDALENA KASTNER, Plaintiff and Respondent, v. LOS ANGELES METROPOLITAN TRANSIT AUTHORITY et al., Defendants and Appellants.

David H. Olson, Harry M. Hunt and Victor Rosenblatt for Defendants and Appellants.

Gibson, Dunn & Crutcher and G. Edward Fitzgerald for Plaintiff and Respondent.

McCOMB, J.—Defendants appeal from a judgment in favor of plaintiff, after trial before a jury, in an action to recover damages for wrongful death.

*Facts:* Plaintiff is the widow of Paul Kastner, who died as the result of injuries sustained in a bus-pedestrian accident on January 5, 1959, at approximately 10 p.m., at the intersection of Crenshaw Boulevard and Florence Avenue in the City of Los Angeles.

At the time of the accident, defendant Neal was operating the bus as an employee of defendant Los Angeles Metropolitan Transit Authority and was acting within the course and scope of his employment.

*Questions:* First. *Was there substantial evidence to sustain the verdict?*

*Yes.* Defendant Neal testified, as follows:

Immediately before the accident, he was proceeding in a southerly direction on Crenshaw Boulevard in the lane next to the center of the street. When he was about 50 to 75 feet north of the crosswalk at the intersection of Crenshaw Boulevard and Florence Avenue, the signal turned to green for traffic on Crenshaw.

At that time, he saw two northbound cars. After they had passed him, he made a left turn onto Florence Avenue, accelerating from a speed of about 2 or 3 miles an hour at the point at which he made his turn to about 5 miles an hour at the crosswalk.

It was raining very hard. There were windshield wipers on the front windows, and he could see for a distance of half a block in front of the bus. If he looked directly out the side windows, he could see across the street. The windows on the sides were "very heavy [*sic*] covered with rain, probably some mud and film."

The vehicle was approximately 35 feet long; and when he turned and went through the easterly crosswalk, the right front of the vehicle was in the curb lane on Florence Avenue and the left rear in the second lane.

He did not hear any sound of an unusual nature until his vehicle was "approximately straightened out going towards the curb at approximately 45-degree angle." At that time, the speed of the vehicle was approximately 12 miles an hour, and the front end of the bus was approximately 30 feet past the east line of the crosswalk.

What he heard "sounded like something had been blown or thrown or knocked into the side" of the bus "about the middle between the front and the rear." He did not know whether the contact was on the right or the left side. The vehicle proceeded about 50 feet farther before he brought it to a stop.

He alighted and walked back to a point near the middle of the bus. He then saw in the street an object which he determined to be a man's body. The body was "approximately between 15 and 18-20 feet" east of the east line of the crosswalk and "approximately 12 or 14 feet" north of the curb line on Florence Avenue. He later walked around the bus twice, but observed no unusual marks on the road film on the bus. He did not, however, use a flashlight in making his observations.

Defendant Neal admitted that at the coroner's inquest he had testified that at the time he heard the thud the front of the bus was past the crosswalk but he could not say for sure whether the center of the bus was.

Harry Waggoner, a service station operator at the southeast corner of Florence and Crenshaw, testified that he saw the bus just before the accident as it was approaching the intersection; that he observed it until it was in approximately the center of the intersection; that the telephone at the service station rang, and he ran inside to answer it; that he subsequently observed the bus after it had made the turn; that he saw a reflection of something falling on the left side of the bus about 3 feet back of where the driver would sit; that he then saw the left rear of the bus rise up and an object come shooting out as if it had been pushed with a great force approximately 10 feet to the rear of the bus; and that he ran out to the street and saw the body of a man lying 7 feet from

the south curb of Florence Avenue and 20 feet east of the crosswalk.

Stuart Baxter, a police officer, testified as to his training and experience in the investigation of traffic accidents, in order to qualify as an expert witness; and he was allowed to give his opinion as to the point of impact. He placed such point in the easterly half of the crosswalk approximately 15 feet north of the south curb of Florence Avenue.

Officer Baxter testified that he based his opinion on the following factors: "The travel of the bus in its direction of travel and path, crossing the crosswalk, the statement of the driver, and the marks on the side of the bus [disturbances in the road film], the path of the bus as described by the driver, and his observations of a thud that he had heard while he was turning."

Officer Baxter testified that the disturbances in the road film on the front and side of the bus appeared to be recent and to have been caused at approximately the time of the accident, that they were on the right-hand corner of the bus and extended to about the right front wheel, and that in his opinion they were "connected with the pedestrian and the bus." He admitted, however, that at the coroner's inquest he had testified that he was unable to determine if the marks had been left by the pedestrian.

Although there were large clots of blood at the point where the body came to rest, there was no physical evidence in the street to indicate the point of impact.

Whether defendant Neal, in the circumstances related, exercised ordinary care in looking for pedestrians or was negligent in failing to see the deceased was purely a question of fact for the jury. (*Foti* v. *Morrissey,* 57 Cal.App.2d 328, 331 [1] [134 P.2d 51] [hearing denied by the Supreme Court]; cf. *McNear* v. *Pacific Greyhound Lines,* 63 Cal.App.2d 11, 14 [1] [146 P.2d 34] [hearing denied by the Supreme Court].)

The evidence hereinabove set forth was sufficient to sustain the finding of the jury that defendants were guilty of negligence.

Second. *Did the court err in admitting the opinion testimony of Officer Baxter as to the point of impact?*

*No.* Defendants contend that it was not proper to allow Officer Baxter to give an opinion on the point of impact, since

he based his opinion almost entirely on a statement given to him by defendant Neal.*

■ In a proper case, an expert can give his opinion, whether he bases such opinion on facts presented in a hypothetical question or upon facts he observed for himself. The key question is whether or not the subject under discussion is one permitting expert testimony, not the source of the facts upon which the opinion is predicated.

■ Thus, expert testimony is admissible or not dependent upon whether the subject matter is within common experience or whether it is a special field where the opinion of one of skill and experience will be of greater validity than that of the ordinary juryman. ■ It is quite obvious that the conclusion, based upon the facts of the particular case, as to just where a collision between two vehicles occurred, may be so obvious that any reasonable person, trained or not, can draw that inference from the facts.

It is equally clear that cases may occur where the opinions of trained experts in the field on this subject will be of great assistance to the members of the jury in arriving at their conclusions. In such cases, a traffic officer who has spent years investigating accidents in which he has been required to render official reports not only as to the facts of the accidents but also as to his opinion of their causes, including his opinion, where necessary, as to the point of impact, is an expert. Necessarily, in this field much must be left to the common sense and discretion of the trial court. (*Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 716, 724-727 [4-6] [232 P.2d 572].)

*Defendant Neal's statement was, as follows: ''I was traveling south on Crenshaw in the center lane of traffic and was making a left-hand turn into Florence Avenue when I heard a thud to the rear of my bus. When I heard this thud I stopped the bus as quickly as I could and upon looking behind the bus I saw the pedestrian lying in the roadway. I made a normal left-hand turn and did not cut the button when leaving Crenshaw or entering Florence.

''I was turning slow and was almost completely turned when I heard the thud. I had nearly completed my turn and was just starting to right the steering wheel to straighten it out when I heard the thud. I did not see any pedestrians in the crosswalk when I started turning or while I was turning. I did not observe any pedestrians standing on the southeast corner of the intersection when I started turning or while I was turning. I did not see any pedestrians in the roadway before I heard the thud.

''No one identified themselves to me as a witness. I was wearing my glasses when I was driving. My bus was empty when the traffic accident happened and I was not intending to pick up at the bus stop east of Crenshaw.''

■ The expert in any case proper for the reception of expert testimony may give his opinion although he did not personally observe the facts, basing his opinion upon the facts testified to by other witnesses and included in hypothetical questions put to him. ■ If the case is one for expert testimony, this is so not because the expert has witnessed the facts, but because he is qualified by reason of his special knowledge to form an opinion on the facts while the ordinary juror is not. (*Manney* v. *Housing Authority*, 79 Cal.App.2d 453, 459-460 [3] [180 P.2d 69] [hearing denied by the Supreme Court].)

■ In the present case, the point of impact was not so obvious that any person, trained or not, could infer from the evidence where it was located. Accordingly, the case was one where the opinion of a trained expert in the field could be of assistance to the members of the jury in arriving at their conclusions, and the trial court properly received opinion evidence by a person found to be qualified to testify as an expert.

■ Opinion evidence based on hearsay is inadmissible. (See Jones on Evidence (5th ed. 1958) § 421, p. 794.) ■ Officer Baxter's opinion, however, although based to a large extent upon defendant Neal's statement made outside the courtroom, was not based upon hearsay evidence, because defendant Neal testified on the witness stand to the identical facts which were included in his statement. (See *George* v. *Bekins Van & Storage Co.*, 33 Cal.2d 834, 844 [205 P.2d 1037].)

■ Although under the above rules Officer Baxter's opinion was properly received in evidence, how much weight it was entitled to receive is another matter. The trial court, however, properly instructed the jurors that they were to give it only the weight to which they deemed it entitled, and that they could reject it if in their judgment the reasons given for it were unsound. (See *Wells Truckways, Ltd.* v. *Cebrian*, 122 Cal.App.2d 666, 677-678 [9-10] [265 P.2d 557].)

The following cases, relied on by defendants, are factually distinguishable:

In *Stuart* v. *Dotts*, 89 Cal.App.2d 683 [201 P.2d 820], the police officer based his opinion on the defendant's statement, which was a self-serving declaration and inadmissible under the hearsay evidence rule. In addition, the officer had not been qualified as an expert.

In *Ribble* v. *Cook*, 111 Cal.App.2d 903 [245 P.2d 593], the police officer's opinion was ruled to lack proper foundation,

because it was based on the self-serving declaration of the defendant and the statement of a witness who did not see the impact, which evidence was clearly hearsay. The officer's testimony was adjudged almost worthless, because it depended on the credibility of persons other than himself.

In *Kalfus* v. *Fraze,* 136 Cal.App.2d 415 [288 P.2d 967], the police officer based his opinion on conversations with the defendant and another witness at the scene of the accident. Evidence of the defendant's self-serving declaration and the witness' statement were both inadmissible under the hearsay evidence rule.

In *Hodges* v. *Severns,* 201 Cal.App.2d 99 [20 Cal.Rptr. 129], the police officer who testified was not qualified as an expert witness.

Third. *Did the court err in giving the following instruction? "The law presumes that Paul Kastner, now deceased, was exercising ordinary care and was obeying the law in the manner in which he crossed the intersection in question, and presumes that he was crossing such intersection within the marked pedestrian cross-walk provided therefor. Each will support a finding in accord with the presumption where there is no proof to the contrary, and each will support such a finding in the face of contrary evidence, if your judgment so directs after weighing the conflicting evidence.*

*"When such a conflict exists, it is the jury's duty to weigh the presumption, and any evidence which may support it, against the contrary evidence, and to determine which, if either, preponderates. Such deliberations, of course, shall be related to and be in accord with my instructions on the burden of proof."*

*No.* The instruction is based on section 1963, subdivisions 1 and 33, of the Code of Civil Procedure and is in accord with two decisions of this court. (*Westberg* v. *Willde,* 14 Cal.2d 360, 364-365 [1] [94 P.2d 590]; *Olsen* v. *Standard Oil Co.,* 188 Cal. 20, 24-25 [5] [204 P. 393].)

The judgment is affirmed.

Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

TRAYNOR, C. J.—I concur in the judgment for the reasons stated in my concurring opinion in *Brown* v. *Connolly,* 62 Cal.2d 391, 398 [42 Cal.Rptr. 324, 398 P.2d 596].