[Civ. No. 40169. Second Dist., Div. Three. Aug. 7, 1973]

AURELIO ARELLANO, Plaintiff and Appellant, v.
GERONIMO C. MORENO, Defendant and Respondent.

**COUNSEL**

Kenneth L. Knapp and Leonard Sacks for Plaintiff and Appellant.

Cummins, White & Breidenbach and Daniel H. Williams III for Defendant and Respondent.

**OPINION**

**COBEY, Acting P. J.**—Plaintiff, Aurelio Arellano, appeals from a judgment, rendered on a ten to two verdict, in favor of defendant, Geronimo

C. Moreno, in plaintiff's action for damages for injuries sustained by plaintiff when defendant's automobile knocked another automobile into plaintiff.[1]

Plaintiff contends that the trial court committed reversible error in (1) refusing BAJI No. 3.52, an instruction proffered by him to the effect that the contributory negligence of a plaintiff does not bar his recovery for an injury caused by the wilful or wanton misconduct of a defendant; (2) giving defendant's requested instructions stating the provisions of Vehicle Code sections 24800 and 24250; and (3) permitting the investigating officer to testify regarding the location of the point of impact and unduly limiting plaintiff's counsel's cross-examination of the officer on the matter. We affirm for reasons hereinafter set forth.

## FACTS

On early Saturday morning, August 17, 1968, about 4:40, while it was still dark and the street lights were on, plaintiff, driving southbound on Huntington Drive in Los Angeles, on his way to work, saw some acquaintances of his, the Davilas, pushing their 1961 four-door Comet sedan backwards out of the driveway adjoining their home. Plaintiff parked his truck and came over to see whether he could be of assistance. He inquired as to what their trouble was. Davila replied that their car apparently had a dead battery. Plaintiff suggested that Davila turn on the Comet's parking lights before they pushed it into the street. Davila did so.[2] The three of them then pushed the car into the street, whereupon Mrs. Davila went back to the sidewalk and watched. The parking lights on the Comet were very dim.

When the car was out in the street near the center line of the street, plaintiff was standing at its right rear end and Davila was alongside the opened front door on the driver's side with a hand on the steering wheel so that Davila and plaintiff could push the car around and head it southbound preparatory to plaintiff then getting the car started by pushing it with his truck. The Comet was then at a slight angle and no light emanated

---

[1]The appeal is also from the order denying plaintiff's motion for a new trial. Pursuant to Code of Civil Procedure section 906 this order will be reviewed on the appeal from the judgment. The order is, however, nonappealable and the purported appeal therefore will be dismissed. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 71, p. 4084.)

[2]Davila alone testified that plaintiff told him to turn on the headlights of the Comet and that he did so.

from its interior. At this moment defendant's Mustang struck the Comet in the manner hereafter described.

Just prior to the collision defendant was driving his comparatively new Mustang at a speed below the posted limit of 35 miles per hour northbound on Huntington Drive. He was alone in the car but he had a full, open container of menudo soup in front of the front seat on the passenger side. From time to time he would glance down to make sure that the soup was not spilling, and just before the ensuing collision between the Mustang and the Comet defendant was watching the soup more carefully as he had just seen the container slide toward the seat. Suddenly defendant saw directly ahead of him the door of a car. He had no time to apply his brakes but instead swerved the Mustang to the right and then swung it back to the left because of parked cars to his right. The left front end of the Mustang then struck the left rear end of the Comet. Although the impact of the collision did not cause the soup to spill, it moved the Comet against plaintiff who was knocked to the ground and injured.

The principal factual issue in the case is whether the rear end of the Comet was beyond the center line of the street when the Mustang struck it. The Davilas and plaintiff testified that it was not. Defendant, on the other hand, testified in effect that it was, and the investigating officer opined that the point of the impact between the two cars was in the northbound traffic lanes or, in other words, on defendant's side of the street.

Further factual evidence will be alluded to as necessary in the course of the ensuing discussion.

## DISCUSSION

There seems to be little question but that defendant's negligence caused plaintiff's injuries. The defense verdict can be explained only on the basis that the jury concluded that plaintiff's negligence was a contributing cause of the collision between the two automobiles.

*BAJI No. 3.52 was Properly Refused.*

■  Plaintiff contends that the evidence required the giving of BAJI No. 3.52 regarding the wilful or wanton misconduct of defendant.[3] He

---

[3]BAJI No. 3.52 reads: "Contributory negligence of a plaintiff is not a bar to his recovery for an injury caused by the wilful or wanton misconduct of a defendant.

"Wilful or wanton misconduct is intentional wrongful conduct, done either with knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results."

points to evidence that defendant had consumed six cans of beer between approximately 8:30 and 9:30 the evening before the accident and that he had had a maximum of four hours sleep that night. But there was no evidence that defendant was intoxicated at the time of the accident or that he had been dozing while driving immediately prior thereto. Defendant's negligence seems to have been limited to his sporadic momentary inadvertence caused by his fear of spilling the soup. Such negligence does not constitute either wilful or wanton misconduct. (See *Winn* v. *Ferguson,* 132 Cal.App.2d 539, 542 [282 P.2d 515].)

*The Instruction Setting Out Vehicle Code Sections 24800 and 24250 were Properly Given as a Basis for BAJI No. 3.45.*[4]

Plaintiff next contends that the two instructions requested by defendant setting out the provisions of Vehicle Code sections 24800 and 24250 as a basis for the giving of BAJI No. 3.45 instruction should not have been given.[5] In support of this contention plaintiff first argues that the Comet at the time of the collision was not a "vehicle" within the meaning of these sections since it could then be moved only by human power alone and under Vehicle Code section 670 (defining a "vehicle") such a device is not a vehicle.[6] Plaintiff further argues that at the time of the collision he was neither driving nor operating the Comet and was, therefore, not responsible under the Vehicle Code for its lighting.[7]

■ We disagree with plaintiff's construction of Vehicle Code section 670. It ignores the use of the word "may." In our view a vehicle does not cease to be a vehicle because it is temporarily inoperable.

We further disagree with plaintiff's position that at the time of the accident he was not engaged in driving or operating the Comet. ■ It

---

[4]BAJI No. 3.45 was given in the following form: "If you find that a party to this action violated any of the code sections just read to you [and that such violation was a proximate cause of injury to another or to himself], you will find that such violation was negligence [unless such party proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law]."

[5]These special instructions read: "No vehicle shall be driven at any time with the parking lamps lighted except when the lamps are being used as turn signal lamps or when the headlamps are also lighted."

"During darkness, a vehicle shall be equipped with lighted lighting equipment as required for the vehicle by this chapter."

[6]Vehicle Code section 670 reads: "A 'vehicle' is a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved by human power or used exclusively upon stationary rails or tracks."

[7]Vehicle Code section 24002 in pertinent part reads: "It is unlawful to operate any vehicle . . . which is not equipped as required by this code, . . ."

is true that at this precise moment he was merely standing at the right rear end of the Comet, but he and Davila were then engaged in trying to push the Comet into a position where plaintiff could start it by pushing it with his truck. Apparently at the time of the collision plaintiff was waiting for Davila to signal him that Davila had the steering wheel under control. Davila was positioned to do the steering and some of the pushing while plaintiff was standing where he did in order to do most of the manual pushing. Between them they controlled the movement of the Comet in its inoperable condition. Under Vehicle Code section 305, defining "driver" as "a person who . . . is in actual physical control of a vehicle," plaintiff was *a* driver of the Comet at the time of the collision even though at that precise time he was not actually exercising such control. (See *Panopulos* v. *Maderis,* 47 Cal.2d 337, 342 [303 P.2d 738]; cf. *Shannon* v. *Thomas,* 57 Cal.App.2d 187, 199 [134 P.2d 522]; *Fleming* v. *Flick,* 140 Cal.App. 14, 23 [35 P.2d 210].) As such, he was legally responsible for the Comet's statutorily insufficient lighting, without which defendant might have seen the Comet in time to avoid the accident.[8]

*The Admissibility of the Police Officer's Expert Opinion of Impact.*

Plaintiff next contends that the testimony of the investigating police officer, who arrived at the scene of the accident a half hour or so after its occurrence, regarding the point of impact between the two vehicles, should not have been admitted over his counsel's appropriate objection,[9] since it was based at least partially on hearsay.

The police officer's expert opinion locating the point of impact of the two vehicles was based on Davila and defendant pointing out to him the spot where both thought the impact had occurred and a single fresh straight impending-type skid mark approximately six feet long just north of this spot apparently laid down by defendant's car immediately following the impact, which the officer identified as such, following his location of the point of impact. But the officer admitted that he did not observe any physical debris whatsoever and conceded on cross-examination that he would not have had any opinion as to the location of the point of impact had Davila and defendant not located it for him. Moreover, again on cross-examination, he admitted that his opinion on this crucial point had not been formed on the basis of the "visual facts" alone.

[8]We realize that our interpretation of the word "driver" is much broader than that given in the drunk driving case of *People* v. *Kelley,* 27 Cal.App.2d Supp. 771, 772-773 [70 P.2d 276].

[9]Plaintiff's counsel objected to the receipt of this evidence in part as follows: "It was only based upon the statements of the two adverse parties." "It was not substantiated by physical facts." "There were no physical bases for the opinion."

Evidence Code section 801, subdivision (b), requires as a precondition to the admissibility of the opinion of an expert witness that such opinion be based on matter "that is of a type that reasonably may be relied upon . . . unless . . . [the] expert is precluded by law from using such matter as a basis for his opinion."[10] Under Evidence Code section 160 the term "law" includes both statutory and decisional law. Evidence Code section 803 provides that the court, upon objection, may exclude testimony in the form of an opinion that is based "in whole or in significant part" on matter that is not a proper basis for such an opinion.

■ The Evidence Code, including the aforementioned sections, was drafted by the California Law Revision Commission. Section 801 of the code was enacted by the Legislature exactly as proposed by the commission.[11] The proposed code, when presented to the Legislature in January 1965, was accompanied by comments of the commission to each section.[12] These comments explained the purpose of each section, its relation to other sections and discussed potential problems of its meaning or application. The Assembly Committee on Judiciary in its published report to the Assembly on AB 333, which became the code, stated that these comments of the commission reflected the intent of the committee in approving the unchanged sections of the proposed code. The Senate Committee on Judiciary in its subsequent published report to the Senate adopted an identical position with respect to the commission's comments on unchanged sections. (See 7 Cal. Law Revision Com. Rep. (1965) *supra,* at pp. 1007-1008.) From this it can readily be inferred that with respect to unchanged sections of the Evidence Code the commission's comments state the intent of the Legislature regarding those sections.

The commission's comment to subdivision (b) of section 801 indicates clearly that the subdivision represents a codification of decisional law. In the comment the commission points out that under this law whether

---

[10]This portion of the statute reads: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is:

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(b)   Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

[11]Compare Statutes 1965, chapter 299, section 801 with 7 California Law Revision Commission Report (1965) pages 1, 148; see also *id.* at pages 912-913, 923, 925.

[12]These comments are published by both the Bancroft Whitney and the West Publishing Company in their editions of the Evidence Code.

an expert may rely on statements made and information received from others depends on the particular field of expertise involved. Far greater latitude in this respect is accorded to physicians and valuation experts than is granted auto accident experts. Furthermore, according to the comment, the latter "may not rely on extrajudicial statements of others as a partial basis for an opinion as to the point of impact, whether or not the statements would be admissible evidence." The cases of *Hodges* v. *Severns,* 201 Cal.App.2d 99, 108 [20 Cal.Rptr. 129], and *Ribble* v. *Cook,* 111 Cal.App.2d 903, 906 [245 P.2d 593], are cited in the comment in support of this statement.[13]

These two cases, however, were distinguished in the subsequent case of *Kastner* v. *Los Angeles Metropolitan Transit Authority,* 63 Cal.2d 52, 58-59 [45 Cal.Rptr. 129, 403 P.2d 385], decided in late June 1965, after the enactment of the Evidence Code, but before its effective date. (See Evid. Code, § 12, subd. (a).) There, our Supreme Court, without reference to the Evidence Code, held admissible the opinion of the investigating officer regarding the point of impact where such opinion was based to a large extent on the defendant bus driver's extrajudicial statement because at the trial the driver testified to facts identical to those included in his earlier statement to the officer. (*Id.* at pp. 54, 58.)

In the instant case the officer's opinion regarding the location of the point of impact was based partially on the statements to him (Evid. Code, § 225) of Davila and defendant on the matter. Davila's location for the officer of the point of impact on defendant's side of the street does not appear, however, to have been hearsay in light of Evidence Code sections 1224 and 1230.[14] Under *Kastner,* since defendant in his testimony indi-

---

[13]The statement would appear to accord with the general rule elsewhere. (See Annot. (1959) Opinion Evidence—Point of Collision, 66 A.L.R.2d 1048, 1063.)

[14]Section 1224 reads: "When the liability, obligation, or duty of a party to a civil action is based in whole or in part upon the liability, obligation, or duty of the declarant, or when the claim or right asserted by a party to a civil action is barred or diminished by a breach of duty by the declarant, evidence of a statement made by the declarant is as admissible against the party as it would be if offered against the declarant in an action involving that liability, obligation, duty, or breach of duty."

Secton 1230 reads: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."

Davila was unavailable to testify at the trial and pursuant to oral stipulation between counsel in open court portions of his deposition were read to the jury.

cated that the point of impact was located on his side of the street, which is where he had previously located it for the officer just after the accident, the officer's testimony predicated upon such location by defendant can be said to have not been based on hearsay.

■ In any event, whether based on hearsay or not, the location of the point of impact used by the officer was apparently agreed to by the owners of both cars involved in the accident immediately after its occurrence. It, therefore, would appear to be, at worst, reasonably reliable hearsay and, accordingly, under Evidence Code section 801, subdivision (b), a proper basis for the officer's expert opinion. (See Witkin, Cal. Evidence (2d ed. 1966) § 410, pp. 368-369; Jefferson, California Evidence Bench Book (1972) § 29.4, pp. 508-509.) Under these circumstances the possibly partial hearsay basis of the officer's opinion went to its weight and not to its admissibility.

*The Refusal to Allow a Hypothetical Question of the Officer Was Not Reversible Error.*

In his cross-examination of the police officer regarding the officer's opinion as to the point of impact being located on defendant's side of the street, plaintiff's counsel asked the following question: "Q. Officer, assume that the P4, the Comet vehicle, was not moved after its original resting place up until the time you found it, one, and assume that the damage as shown here on plaintiff's No. 10 [a photograph] was the damage that was sustained by this vehicle as a result of the collision, do you believe that the impact could have moved the car in [*sic*] that position?" Defendant's counsel objected on the basis that the question assumed a fact not in evidence— namely, that the Comet was not moved after the impact. The court sustained the objection.

This was error. It is true that defendant had testified on direct examination that after the accident the Comet had been moved before the police officer arrived. But on cross-examination this testimony had been impeached by his prior inconsistent statement on deposition that he was "pretty sure" that such had not occurred. Under Evidence Code section 1235 this impeaching evidence constituted substantive evidence. (See Cal. Law Revision Com. comment to section; *People* v. *Green,* 3 Cal.3d 981, 985 [92 Cal. Rptr. 494, 479 P.2d 998], cert. dism. 404 U.S. 801 [30 L.Ed.2d 34, 92 S.Ct. 20].)

■ Nevertheless, we do not believe that this is reversible error. Apparently plaintiff wished to establish by the officer's presumed negative answer

to the question that the comparatively slight impact between the two vehicles could not have moved the Comet from defendant's side of the street to the place considerably on plaintiff's side of the street where the officer found it and, therefore, the officer's opinion locating the point of impact on defendant's side of the street was mistaken. The lack of this impeaching negative answer did not prevent plaintiff's counsel, however, from arguing the claimed nonmovement of the Comet to the jury at some length since the jury had before it on a large diagram of the scene of the accident all of the evidence (excepting the photograph which was, however, in evidence) contained in plaintiff's counsel's hypothetical question regarding the Comet's locations before and after the accident and defendant's previously mentioned conflicting testimony on the question whether the Comet was moved after the accident and before the arrival of the police officer. In this connection we note that defendant's testimony as to nonmovement of the Comet was unqualified while his testimony indicating movement thereof was qualified.[15] Under these circumstances, we do not think it reasonably probable that a result more favorable to plaintiff would have been reached if the officer had been permitted to answer the hypothetical question and had answered it in the negative. (See Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

The purported appeal from the order denying plaintiff's motion for a new trial is dismissed. The judgment in favor of defendant is affirmed.

Schweitzer, J., and Allport, J., concurred.

A petition for a rehearing was denied August 29, 1973, and appellant's petition for a hearing by the Supreme Court was denied October 3, 1973.

---

[15]We note further that plaintiff's counsel reread defendant's prior inconsistent statement in his deposition on the question of the movement of the Comet, without objection, shortly after the court erroneously sustained defendant's counsel's objection to plaintiff's counsel's hypothetical question. It is true that at one point in defendant's counsel's argument to the jury he argued that the Comet could have been moved by the impact to the location the officer found it. But this statement was made after a lengthy quotation of his client's testimony indicating quite the contrary.